# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| **KEY EQUIPMENT FINANCE INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO.    08 CV 50005** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEREMY BRUSKI, individually** | ) | |
| | ) | |
| **Defendant.** | ) | |

### NOTICE OF MOTION FOR DEFAULT JUDGMENT

To:    See Attached Service List


PLEASE TAKE NOTICE THAT on the 21st day of March, 2008, at 9:00 a.m., we shall appear before the Judge presiding in Room 220 at the Rockford Courthouse, 211 South Court St., Rockford, Illinois, 61101, and then and there present Plaintiff's Motion for Default Judgment, a copy of which is attached hereto and herewith served upon you.


/s/    Maysoun B. Iqal

Maysoun B. Iqal


Patricia E. Rademacher
Maysoun B. Iqal (005855)
COSTON & RADEMACHER
Attorneys for Plaintiff
105 W. Adams, Suite 1400
Chicago, Illinois  60603
Telephone:  (312) 205-1010

## SERVICE LIST

Jeremy Bruski
3805 Standish Rd.
Marengo, IL 60152


## CERTIFICATE OF MAILING

    I, Maysoun B. Iqal, an attorney, certify that I served a copy of this notice and the above-referenced document on the persons to whom it is directed, at the addresses shown above, by placing same in the U.S. Mail depository at 105 W. Adams St., Suite 1400, Chicago, IL 60603, at or before 5:00 p.m. on this 7th day of March, 2008, with proper postage prepaid.


        /s/    Maysoun B. Iqal
           Maysoun B. Iqal


Patricia E. Rademacher
Maysoun B. Iqal (005855)
COSTON & RADEMACHER
Attorneys for Plaintiff
105 W. Adams, Suite 1400
Chicago, Illinois 60603
Telephone: (312) 205-1010

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| **KEY EQUIPMENT FINANCE INC.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | )    **CASE NO.**    **08 CV 50005** |
| | ) |
| **v.** | ) |
| | ) |
| **JEREMY BRUSKI, individually** | ) |
| | ) |
| **Defendant.** | ) |

**MOTION FOR DEFAULT JUDGMENT**

NOW COMES Plaintiff, KEY EQUIPMENT FINANCE INC. ("KEY"), by and through its attorneys COSTON & RADEMACHER, and moves this Court, pursuant to Fed. R. Civ. Pro. 55, for entry of a Judgment by Default against Defendant, JEREMY BRUSKI, individually ("J. BRUSKI"), as follows:

1.

KEY filed a complaint on January 4, 2008, against the above named Defendant, J. BRUSKI. Said complaint requested a judgment in the amount of $98,050.62.

2.

Said complaint and an accompanying summons were served upon Defendant J. BRUSKI on February 11, 2008. A true and correct copy of the Summons and Return of Service is attached hereto as Exhibit "A" and incorporated herein by reference.

3.

Pursuant to Fed. R. Civ. P. 4, the time for the filing of an answer has passed. Twenty (20) days have passed since service on said Defendant, and said Defendant has not filed an Appearance, and has not answered or otherwise pleaded to Plaintiff's Complaint.

4.

In accordance with Fed. R. Civ. P. 55(b)(2), Plaintiff files this motion for entry of default by the Court.

5.

Defendant is not an infant, incompetent or in military service, as averred in attached Exhibit "B."

6.

A review of the docket indicates that no response to the complaint filed on January 4, 2008, has been made. Plaintiff's counsel avers that the complaint was served on the Defendant by personal service at a location other than the addresses listed on the summons. Accordingly, Plaintiff asserts that the Defendant's failure to plead or otherwise defend said complaint, said failure having been made to appear by the accompanying affidavit, warrants the Court's entry of default judgment against this Defendant.

7.

Based on the Verified Complaint attached hereto as Exhibit "C," Plaintiff is owed damages as described below:

        (i)     A total of at least $98,050.62, based on J. BRUSKI's breach of his personal guaranties regarding the two Leases entered into between non-party Bruski Excavating, Inc. and Plaintiff. KEY agreed to finance and deliver certain equipment to Bruski Excavating, Inc. under two separate equipment leases; Lease #CW01175725 for one (1) 2001 Sterling Dump

Truck, and Lease #CW01167907 for one 2005 Kumatsu Excavator.  J. BRUSKI, for his part, unconditionally guaranteed prompt payment of all indebtedness in event of default by Bruski Excavating, Inc. on both aforementioned leases.  KEY performed its obligations pursuant to the contracts by, among other things, providing financing and delivery of the equipment.  Bruski Excavating, Inc. defaulted under the Agreement by failing to remit payments due to KEY as described in the attached Verified Complaint; plus

   (ii) Fees.  $2726.00 (see attached Affidavit of Fees and Costs); and

   (iii) Costs.  A total of at least $727.45 in costs (see attached Affidavit of Fees and Costs);

WHEREFORE, Plaintiff, KEY EQUIPMENT FINANCE INC., prays for the entry of an order in favor of Plaintiff and against Defendant, JEREMY BRUSKI, individually, adjudging said Defendant to be in default for his failure to answer or otherwise plead to the Complaint, and for entry of judgment by default against Defendant, JEREMY BRUSKI, individually, in the amount of $101,504.07 and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

    Respectfully submitted,

    KEY EQUIPMENT FINANCE INC.

  By: /s/  Maysoun B. Iqal
       Maysoun B. Iqal

Patricia E. Rademacher
Maysoun B. Iqal (005855)
COSTON & RADEMACHER
Attorneys for Plaintiff
105 W. Adams, Suite 1400
Chicago, Illinois  60603
Telephone:  (312) 205-1010

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

Key Equipment Finance Inc.

v.

Jeremy Bruski, individually and
Regan Bruski, individually

08CV50005
JUDGE KAPALA
MAG. JUDGE MAHONEY

DESIGNATED
MAGISTRATE JUDGE:

TO: (Name and address of Defendant)

Jeremy Bruski
3805 Standish Rd.
Marengo, IL 60152

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Maysoun B. Iqal
Coston & Rademacher
105 W. Adams, Ste. 1400
Chicago, IL 60603
312-205-1010

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

_____
(BY) DEPUTY CLERK

EXHIBIT
A

JAN - 4 2008
DATE

## AFFIDAVIT OF SPECIAL PROCESS SERVER

Key Equipment Finance     Jeremy Bruski    08CV50005

Plaintiff/Petitioner          vs.          Defendant/Respondent        Case No. #

Being duly sworn on my oath, I     Anthony ORTOLANO
declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

**SERVICE**

served     Jeremy Bruski

NAME OF PERSON/ENTITY BEING SERVED

**DOCUMENTS**     Summons & Complaint

by serving (NAME)     Jeremy Bruski

at ☐ Home

X Business     308 W. State St Rm 40 Rockford, Il.

X on (DATE)     2-11-08          at (TIME)     1:40 p.m.

Thereafter copies of the documents were mailed by prepaid first class mail on (DATE) _____

from (CITY) _____          (STATE) _____

**MANNER OF SERVICE**

X By Personal Service.

☐ By leaving, during office hours, copies at the office of the person/entity being served, leaving same with the person apparently in charge thereof, namely _____

☐ By leaving copies at the usual place of abode of the person being served, with a member of the family of suitable age and explaining the general nature of the papers, namely _____

☐ By posting copies in a conspicuous manner to the address of the person/entity being served.

**NON-SERVICE**

After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s): _____

_____

_____

**SERVICE ATTEMPTS**

Service was attempted on:  (     ) _____    (     ) _____

DATE    TIME                    DATE    TIME

(     ) _____    (     ) _____    (     ) _____

DATE    TIME            DATE    TIME            DATE    TIME

**PHYSICAL DESCRIPTION**

| | RACE | AGE | HEIGHT | WEIGHT | HAIR |
|---|---|---|---|---|---|
| X Male | White | 34 | 5-9 | 180 | Black |
| ☐ Female | | | | | |

State of Illinois    County of Cook

Subscribed and sworn to before me
Notary public, this 12 day of Feb 20 08

Michelle Yanoff

NOTARY PUBLIC

"OFFICIAL SEAL"
MICHELLE YANOFF
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 6/27/2010

SERVED BY

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| **KEY EQUIPMENT FINANCE INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CASE NO.    08 CV 50005** |
| ) | |
| **v.** ) | |
| ) | |
| **JEREMY BRUSKI, individually** ) | |
| ) | |
| **Defendant.** ) | |

### AFFIDAVIT IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FED. R. CIV. P. 55

**NOW COMES** Maysoun B. Iqal, counsel for the Plaintiff, KEY EQUIPMENT FINANCE INC., and respectfully shows the Court:

(1)     that the summons accompanying the instant complaint was issued on January 4, 2008;

(2)     that the complaint was served on Defendant, Jeremy Bruski, on February 11, 2008;

(3)     that due to service of process on February 11, 2008, Defendant, Jeremy Bruski, pursuant to Fed. R. Civ. P. 4, had until March 3, 2008, to file an answer;

(4)     that the Defendant is not an infant or incompetent person;

(5)     that Defendant has not appeared in this action;

(6)     that upon information and belief, Defendant is not a member of the United States Armed Services; and

(7)     that counsel has reviewed the docket, and that said review indicates that no response to the complaint filed on January 4, 2008, has been made, and, furthermore, counsel avers that the time for the filing of an answer appears to have expired pursuant to Fed. R. Civ. P. 4.

Sworn under penalty of perjury this 7th day of March, 2008.

  /s/  Maysoun B. Iqal
Maysoun B. Iqal (005855)
COSTON & RADEMACHER
Attorneys for Plaintiff
105 W. Adams, Suite 1400
Chicago, Illinois  60603
Telephone:  (312) 205-1010

**EXHIBIT**
*tabbies*
*B*

W:\6914 Key Equipment Finance Inc\18264 Bruski Excavating Inc\Pleadings\Affidavit

*Edward P. Golitko*

OFFICIAL SEAL
EDWARD P. GOLITKO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-10-2008

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| **KEY EQUIPMENT FINANCE INC.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) **CASE NO.** |
| | ) |
| **v.** | ) **08 C 50005** |
| | ) |
| **JEREMY BRUSKI, individually and** | ) **JUDGE KAPALA** |
| **REGAN BRUSKI, individually** | ) |
| | ) **MAGISTRATE JUDGE MAHONEY** |
| **Defendants.** | ) |

RECEIVED
JAN - 4 2008
MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

## VERIFIED COMPLAINT

COMES NOW, KEY EQUIPMENT FINANCE INC., ("KEY EQUIPMENT")

plaintiff in the instant matter, by and through its attorneys, Coston & Rademacher, and

complains against Defendants, JEREMY BRUSKI ("JEREMY") individually and

REGAN BRUSKI ("REGAN") individually as follows:

## NATURE OF ACTION

1.     This action arises out of JEREMY and REGAN's failure to perform their

obligations under the personal guaranty agreements related to a vehicle finance

agreement.

## JURISDICTION

2.     Plaintiff is a corporation organized under the laws of the State of Michigan, with

its principal place of business in Superior, Colorado.

3.     Upon information and belief, Defendant JEREMY BRUSKI is a citizen of the

State of Illinois and resides at 3805 Standish Rd., Marengo, IL 60152.



EXHIBIT
C

4.     Upon information and belief, Defendant REGAN BRUSKI is a citizen of the State of Illinois and resides at 3805 Standish Rd., Marengo, IL 60152.

5.     Jurisdiction in this Court is proper under 28 U.S.C. §1332 and Fed. R. Civ. P. 18(a) as the total amount in controversy exceeds $75,000.00 exclusive of interest and costs that may be heard by this Court.

6.     Venue in this action is proper pursuant to 28 U.S.C. §1391 (a) in that a substantial part of the events giving rise to this claim occurred in the Western Division of the Northern District of Illinois.

## COUNT I
### BREACH OF PERSONAL GUARANTY
### VEHICLE FINANCE AGREEMENT #CW01175725

7.     On or about October 3, 2005, Defendants JEREMY and REGAN, each individually, duly executed an instrument in writing and in consideration of KEY EQUIPMENT's financing of non-party Bruski Excavating Inc.'s purchase of a 2001 Sterling Dump Truck.   JEREMY and REGAN, each individually, unconditionally guaranteed prompt payment, at maturity or by acceleration, of all indebtedness plus interest thereon owed by Bruski Excavating Inc. to KEY EQUIPMENT under Vehicle Finance Agreement #CW01175725, regarding a 2001 Sterling Dump Truck, executed on the same day (see Exhibit "A" attached).

8.     Thereafter, in reliance on the aforementioned guarantees and after the guarantees were given, the funding was provided to the supplier and due notice thereof was given to JEREMY and REGAN.

9.     Bruski Excavating Inc. defaulted under the Finance Agreement and notice of the default as well as a demand for the amounts due were sent to both JEREMY and

REGAN with each party failing to cure the default.

10.    Due to JEREMY and REGAN's failure to cure the amounts owed, they were in default of the guaranty agreements that were executed on October 3, 2005 as a part of the Finance Agreement of the 2001 Sterling Dump Truck.

11.    As a result of JEREMY and REGAN's breach, KEY EQUIPMENT has incurred damages in the amount of $37,153.13, plus costs, interest and attorneys' fees.

**WHEREFORE,** Plaintiff, KEY EQUIPMENT FINANCE INC., prays for judgment against Defendants, JEREMY BRUSKI and REGAN BRUSKI, each individually, in at least the sum of $37,153,13, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

## COUNT II
## BREACH OF PERSONAL GUARANTY
### LEASE #CW01167907

12.    Plaintiff repeats, realleges and incorporates herein by reference each of the allegations contained in the foregoing paragraphs 1 through 11 of this Complaint, inclusive, as if fully set forth herein.

13.    On or about August 19, 2005, Defendants JEREMY and REGAN, each individually, duly executed an instrument in writing and in consideration of KEY EQUIPMENT's financing of non-party Bruski Excavating Inc.'s purchase of a 2005 Komatsu Excavator.    JEREMY and REGAN, each individually, unconditionally guaranteed prompt payment, at maturity or by acceleration, of all indebtedness plus interest thereon owed by Bruski Excavating Inc. to KEY EQUIPMENT under Vehicle Finance Agreement #CW01167907, regarding a 2005 Komatsu Excavator, executed on

the same day (see Exhibit "B" attached).

14.    Thereafter, in reliance on the aforementioned guarantees and after the guarantees were given, the financing was provided to the supplier and due notice thereof was given to JEREMY and REGAN.

15.    Bruski Excavating Inc. defaulted under the Finance Agreement and notice of the default as well as a demand for the amounts due were sent to both JEREMY and REGAN with each party failing to cure the default.

16.    Due to JEREMY and REGAN's failure to cure the amounts owed, they were in default of the guaranty agreements that were executed on August 19, 2005 as a part of the Finance Agreement of the 2005 Komatsu Excavator.

17.    As a result of JEREMY and REGAN's breach, KEY EQUIPMENT has incurred damages in the amount of $60,897.49, plus costs, interest and attorneys' fees.

    **WHEREFORE,** Plaintiff, KEY EQUIPMENT FINANCE INC., prays for judgment against Defendants, JEREMY BRUSKI and REGAN BRUSKI, each individually, in at least the sum of $60,897.49, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

Respectfully Submitted,

KEY EQUIPMENT FINANCE INC.

By: /s/ _____

One of its Attorneys

Patricia E. Rademacher
Maysoun B. Iqal
Coston & Rademacher
105 W. Adams, Suite 1400
Chicago, IL 60603
Phone: 312-205-1010

## <u>VERIFICATION</u>

I, Sal Boscia, on oath state that I am the Senior Litigation Coordinator of Key Equipment Finance Inc. in the above-entitled action. The allegations in this Complaint are true to the best of my knowledge and belief.



_____
Sal Boscia

Subscribed and sworn to before me
this __ day of _____, 2007

_____
Notary Public

My Commission Expires 4-23-08

EXHIBIT
A



## Vehicle Finance Agreement

| Key Equipment Finance Inc. | 3075 Highland Pkwy, 7th floor | Reference Agreement #: |
|---|---|---|
| ("Secured Party") | Downers Grove, IL 60515 Phone: (888) 357-9457   Fax:(866) 256-2230 | 1051524/1175725 |

| A. Debtor: | Supplier: |
|---|---|
| BRUSKI EXCAVATING INCORPORATED | Patson Inc dba Northwest Ford & Sterling |
| 3805 STANDISH RD | 4000 N Mannheim Rd |
| Marengo , IL 60152 | Franklin Park , IL 60131 |
| Contact: Phone: (815) 565-7224 | |

**Vehicle Description:** (described below and/or as described in invoice(s) attached hereto and made a part hereof )
2001 STERLING DUMP

**V.I.N:** 2FZNBJCB71AF78238

**Vehicle Location:**    3805 Standish Rd, Marengo , IL 60152

**Schedule of Payments:**

| Initial Term (In Months) | Total Number Of Payments | Amount of Each Periodic Payment (plus applicable taxes) | Total Initial Payment  $ 0.00 | | | |
|---|---|---|---|---|---|---|
| | | | First  $ 0.00 | | Documentation Fee   $ 350.00 | Other Transaction Fees (if applicable) |
| 48 | 48 | 1,222.75 | Last  $ 0.00 | Security Deposit   $ 0.00 | | $ 0.00 |

**D. DISCLAIMER OF WARRANTIES AND CLAIMS;LIMITATION OF REMEDIES.** THERE ARE NO WARRANTIES BY OR ON BEHALF OF SECURED PARTY AND NEITHER THE SUPPLIER NOR ANY OTHER PARTY IS SECURED PARTY'S AGENT. DEBTOR ACKNOWLEDGES AND AGREES BY ITS SIGNATURE BELOW AS FOLLOWS: (A) SECURED PARTY MAKES NO WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE COLLATERAL, ITS **MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE,** ITS DESIGN, ITS CONDITION, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY CHARACTERISTICS OF THE COLLATERAL. (B) DEBTOR ACCEPTS COLLATERAL "AS IS" AND WITH ALL FAULTS; (C) DEBTOR REPRESENTS AND AGREES THAT THE COLLATERAL WILL BE USED SOLELY FOR COMMERCIAL OR BUSINESS PURPOSES; (D) IF THE COLLATERAL IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE SUPPLIER OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, DEBTOR'S ONLY REMEDY, IF ANY, SHALL BE AGAINST THE SUPPLIER OR MANUFACTURER OF THE COLLATERAL AND NOT AGAINST SECURED PARTY; (E) DEBTOR SHALL HAVE NO REMEDY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES AGAINST SECURED PARTY; AND (F) NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL FOR ANY PURPOSE SHALL RELIEVE DEBTOR OF THE OBLIGATION TO MAKE PAYMENTS OR RELIEVE DEBTOR OF ANY OTHER OBLIGATION UNDER THIS AGREEMENT.

**E. Amendments:** No term or provision of this Agreement may be amended, altered, waived or discharged except by a written instrument signed by all parties to this Agreement.

**F. Certificate of Acceptance:** The undersigned Debtor certifies to Secured Party that all items of Collateral referred to above or on the attachment(s) hereto have been received and irrevocably accepted by the Debtor and were at the time of receipt in good order and condition and acceptable to use. Debtor hereby authorizes Secured Party to immediately remit payment to Supplier. Debtor further understands that its obligations hereunder shall commence the earlier of the date that Debtor receives the Collateral or the date Secured Party remits payment to Supplier. Debtor hereby certifies that Secured Party has fully and satisfactorily performed all covenants and conditions to be performed by it under this Agreement. Debtor agrees to enforce, in its own name, all warranties, agreements or representations, if any, which may be made by the Supplier in respect to the Collateral.

**THIS AGREEMENT, THE TERMS OF WHICH HAVE BEEN FREELY NEGOTIATED BY EACH PARTY, IS SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE OR FOLLOWING PAGE WHICH ARE MADE A PART HEREOF AND WHICH DEBTOR AND SECURED PARTY ACKNOWLEDGE THEY HAVE READ AND ACCEPTED.**

| | Debtor: BRUSKI EXCAVATING INCORPORATED |
|---|---|
| Secured Party: | Signature: X _Stephan Krusm_ |
| Key Equipment Finance Inc. | Name / Title: Jeremy Bruski , President |

### REQUEST FOR ELECTRONIC PAYMENT
**Please attach a voided check from the account to be debited**

The undersigned hereby authorizes and requests Secured Party to initiate electronic debit entries (and credit entries and adjustments for any debit entries in error) or affect a charge by any other commercially accepted practice to the account indicated below in the financial institution named below ("Depository"). The undersigned hereby authorizes and requests the Depository to honor the debit and/or credit entries initiated by Secured Party. This authorization is for payments due under the referenced Agreement. This authority is to remain in force until such time as all amounts due under the Agreement are paid in full or until Secured Party and Depository have received written notification from the undersigned terminating this authorization in such time and manner as to afford Secured Party and Depository a reasonable opportunity to act on it.

| Customer Name (print): BRUSKI EXCAVATING INCORPORATED | Agreement Number: 1051524/1175725 |
|---|---|
| Depository Name and Branch: | Depository Routing Number: |
| Depository Address (city & state): | Account Number: |
| Depository Telephone Number: | Customer Signature: |

**Guaranty:** In consideration of Secured Party entering into this Vehicle Finance Agreement ("Agreement"), the part(ies) or individual(s) executing this Guaranty ("Guarantor," whether one or more) unconditionally and irrevocably guarantee to Secured Party, the prompt payment and performance of all obligations of the Debtor. Guarantor agrees that this is a guaranty of payment and performance and not of collection only , and that Secured Party can proceed directly against Guarantor without first proceeding against Debtor or against the Collateral covered by the Agreement. Guarantor waives all defenses and notices, including those of protest, presentment and demand. Guarantor agrees that Secured Party can renew, extend or otherwise modify the terms of the Agreement and Guarantor will be bound by such changes. If Debtor defaults under the Agreement, Guarantor will immediately perform all obligations of Debtor under the Agreement, including, but not limited to, paying all amounts due under the Agreement. Guarantor will pay to Secured Party all expenses (including attorneys' fees) incurred by Secured Party in enforcing Secured Party's rights against Guarantor. This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of Debtor . If more than one Guarantor has signed this Guaranty, each Guarantor agrees that his/her liability is joint and several. Guarantor authorizes Secured Party or any of Secured Party's designees to obtain and share with others credit bureau reports regarding Guarantor's personal credit, and make other credit inquiries that Secured Party determines are necessary. **THIS GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF UTAH. GUARANTOR EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ENFORCEMENT ACTION BROUGHT BY SECURED PARTY.**

| GUARANTOR | GUARANTOR | GUARANTOR |
|---|---|---|
| X | X _Regan Bruski_ | X |
| SIGN NAME:  Jeremy Bruski | SIGN NAME:  Regan Bruski | SIGN NAME: |

*Rev 12/04*



# Vehicle Finance Agreement

## TERMS AND CONDITIONS

Reference Agreement: 1051524/1175725

**1. Definitions; Reports:** The word "you" and "your" refer to the DEBTOR, its successors and assigns, as shown on the reverse side or preceding page, as applicable (the "first page"). The words "we", "us," and "our" refer to the SECURED PARTY, its successors and assigns, as shown on the first page. You authorize us and our design ees to obtain investigative credit reports, regarding you and each guarantor, from a credit bureau or a credit agency and to investigate the references given on any statement or data obtained and to share such reports with others.

**2. Acceptance; Term:** We agree to lend to you, and you agree to borrow from us, an amount for the purchase of the vehicle described or referenced on the first page together with all equipment, items, products and other personal property attached thereto or made apart thereof ("Collateral"), for an Interim Term as hereinafter provided and the term shown on the first page ("Primary Term" and together with the Interim Term, "Term"). The Interim Term shall commence on the date we first pay the Supplier for the Collateral and end on the day prior to our next monthly billing cycle following our payment to the Supplier or last payment to the Supplier if more than one. The Primary Term shall start on the day following the expiration of the Interim Term and continue for the number of months shown on the first page of this Agreement. We shall have no obligations hereunder until we accept this Agreement at our offices by paying Supplier for the purchase price of the Collateral.

**3. Security Interest:** You hereby grant to us a security interest under the Uniform Commercial Code ("UCC") in the property described or referenced as Collateral and all accessions and additions thereto and replacements thereof and all proceeds and products of the foregoing. Such security interest is granted to secure payment and performance by you of your obligations hereunder and under any other present or future contract with us.

**4. Payments; Prepayment:** You promise to pay us the payments shown on the first page ("Payments"), in advance, commencing as of the first day of the Primary Term and continuing on the same day of each month in which a Payment is due (each such date a "Payment Date"), without need of an invoice; provided, as indicated in the Schedule of Payments on the first page or Payment Schedule attached hereto, the payments indicated in Total Initial Payment are due upon your execution of this Agreement. We reserve the right to adjust the payment shown in the Schedule of Payments, by up to 15% to reflect changes in the total amounts paid to the Supplier or amount borrowed. Any such adjustment shall be reflected on a subsequent invoice to be sent to you within 30 days. If the contemplated transaction is not consummated, the Total Initial Payment may be retained by us as partial compensation for costs and expenses incurred in preparation for the transaction. **On the Payment Date falling in the second month of the Primary Term you agree to pay us an interim payment amount equal to 1/30th of the monthly periodic payment amount multiplied by the number of days of the Interim Term.**

Your obligation to make payments and pay other amounts hereunder is absolute and unconditional and not subject to abatement, reduction or set-off by any reason whatsoever. The Primary Term shall continue for the number of months indicated on the first page. The Security Deposit shown on the first page, if any, shall not bear interest and we may apply the Security Deposit to cure any default, in which event you will promptly restore the Security Deposit to its full amount. After all of the obligations under this Agreement are fully paid and performed, any remaining balance of the Security Deposit shall be refunded to you. You may prepay your obligations under this Agreement in whole but not in part at any time upon prior written notice to us by paying us, in cash, the prepayment amount we quote you pursuant to our current discount method.

**5. Location:** You agree to maintain records showing the location of each item of Collateral. You shall report such location to us upon our request. Your failure, to maintain records showing the location of each item of Collateral and/or to report the location of each item of Collateral shall constitute a material default hereunder.

**6. Maintenance; Installation:** You are responsible for installing and keeping the Collateral in good working order. You shall not make any alterations, additions or improvements to the Collateral, which detract from its economic value or functional utility. All additions and improvements made to the Collateral shall be deemed accessions thereto, and shall not be removed if removal would impair the Collateral's economic value or functional utility. If the Collateral is damaged or lost, you agree to continue making scheduled periodic payments unless you pay the Casualty Value pursuant to Section 14.

**7. Insurance; Indemnification:** You agree at all times to: (1) insure the Collateral against risk of loss in an amount not less than the Casualty Value as defined below, (ii) maintain general public liability insurance in amounts we specify, and (iii) name us on the policy as Loss Payee and Additional Insured all as required by us and from a source who is acceptable to us. You agree to provide us with certificates or other evidence of insurance acceptable to us, before the Term begins, and during the Term. If at any time you have failed to: deliver to us a valid certificate of insurance reflecting such insurance as being in effect, it will be deemed as a material default hereunder. Then we will, in addition to the other remedies available to us hereunder, have the right, but no obligation, to obtain such insurance for the Term at your expense and if so obtained, we will add to your Payments due hereunder and you will pay to us our costs of obtaining such insurance and any customary fees or charges of ours or our designees associated with such insurance. Regardless of the existence of any applicable insurance, you agree to indemnify and hold us, our employees and affiliates harmless from all suits, claims, demands, losses and liabilities arising out of damage to or the use or operation of the Collateral (including reasonable attorneys' fees incurred by us in connection with any such suit, claim, demand, loss or liability).

**8. Taxes and Fees:** You agree to pay when due or reimburse us for all taxes, fees, fines and penalties relating to use or ownership of the Collateral or to this Agreement, including documentary stamp taxes, now or hereafter imposed, levied or assessed by any federal, state or local government or agency. If any federal, state, county or local government or agency requires any taxes, charges or fees to be paid in advance, and we shall pay such taxes, charges or fees, we reserve the right to adjust the remaining Payments, so that we may recover any payment of such taxes, charges or fees. Any such adjustment shall be reflected on your subsequent invoice(s).

**9. Personal Property:** The Collateral will be and shall remain personal property and, at your expense, you shall keep the Collateral free from any and all liens and encumbrances. You shall give us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Collateral.

**10. Titled Equipment:** Any Collateral that is subject to title registration laws shall be titled and registered as directed by us within 10 days of Debtor's receipt of the Collateral. **If the Collateral is not timely or properly registered within the 10-day period, then, in addition to the other remedies available hereunder, Debtor shall pay a late charge for each additional 30-day period during the Term the Collateral remains unregistered or improperly registered.**

**11. Default; Remedies:** If you do not pay when due or if you breach or fail to perform any of your other representations and promises under this Agreement or any other contract entered into by you and held or serviced by us or if you declare bankruptcy or insolvency or if you terminate your entity existence or take any actions regarding the cessation or winding up of your business affairs, you will be in default. If you are in default, at our election, we can accelerate and require that you pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance". The Accelerated Balance will be equal to the total of (i) accrued and unpaid amounts, and (ii) the remaining Payments. We can also pursue any of the remedies available to us under the UCC or any other law. In addition, you agree to pay our reasonable attorneys' fees and actual costs including repossession, refurbishing the Collateral and collection costs arising out of your default, and all non-sufficient funds charges and similar charges.

**12. Late Charge:** If any part of a Payment or other sum due hereunder is late, you agree to pay us a late charge equal to the lesser of (a) the greater of 10% of this late Payment or $29.00 or (b) the maximum amount permitted by applicable law. If any check or funds transfer request for any Payment is returned to Secured Party unpaid, Debtor shall pay Secured Party a service charge of $55 for each such returned check or request.

**13. Assignment; Inspection:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN, LEASE OR ENCUMBER THE COLLATERAL OR THIS AGREEMENT UNTIL YOU HAVE SATISFIED ALL OF THE TERMS OF THE AGREEMENT. We may sell, transfer, assign, or encumber this Agreement. You agree that if we sell, transfer, assign, or encumber this Agreement, the assignee will have the rights and benefits that we assign to the assignee and will not have to perform any of our obligations. You agree that the rights of the assignee will not be subject to any claims, defenses or set-offs that you may have against us. We and our agents and representatives shall have the right at any time during regular business hours to inspect the Collateral and for that purpose to have access to the location of the Collateral.

**14. Risk of Loss:** You hereby assume and shall bear the entire risk of loss, theft, damage and destruction of the Collateral from any cause whatsoever and no loss, theft, damage or destruction of the Collateral shall relieve you of the obligation to make scheduled Payments or any other obligation under this Agreement, and this Agreement shall remain in full force and effect except as provided below. You shall promptly notify us in writing of such loss, theft, damage or destruction. If damage of any kind occurs to any item of Collateral, you, at our option, shall at your expense (a) place the item in good repair, condition or working order, or (b) if the Collateral cannot be repaired or is lost, stolen or suffers a constructive loss under an insurance policy covering the Collateral, pay to us the "Casualty Value." The Casualty Value will be equal to the total of (i) all accrued and unpaid amounts then due and owing under this Agreement and (ii) the remaining Payments discounted to their then present value using our current method of discounting contracts.

**15. Choice of Law; Consent to Jurisdiction; Venue:** This Agreement shall be interpreted, and all rights and liabilities of the parties hereto and thereunder shall be determined and governed as to validity, interpretation, enforcement and effect, by the laws of the State of Utah. Secured Party and Debtor expressly waive any right to a trial by Jury.

**16. Miscellaneous:** During the term of this Agreement, you agree to provide us with all financial statements and copies of federal or state tax returns as we may request. If any provision hereof or any remedy herein provided is found to be invalid under any applicable law, such provision shall be inapplicable and deemed omitted, but the remaining provisions hereof, including remaining default remedies, shall be given effect in accordance with the manifest intent hereof. You agree that any delay or failure to enforce our rights under this Agreement does not prevent us from enforcing any right at a later time. You agree that the terms and conditions reflected in this Agreement or any attachments hereto are a complete and exclusive statement of our agreement. Notwithstanding the foregoing, to the extent there are errors or omissions in the information contained on the first page or any attachment to this Agreement, we may by written notice to you correct such errors or omissions. You agree that the original of this Agreement may be microfilmed or electronically duplicated and a photostatic copy of such microfilm or electronic duplication may be introduced in lieu of the original thereof and without further foundation. The parties hereto expressly waive the necessary evidence rule. You agree that this Agreement will be binding upon your successors, assigns, heirs and legal representatives. You agree that our waiver of any provision hereunder shall not constitute a waiver of any other matter. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of interest permitted to be charged or collected by applicable law, and any such excess payment will be applied to the payments in inverse order of maturity, and any remaining excess will be refunded to you.

**17. Irrevocable Limited Power of Attorney:** Debtor does hereby irrevocably appoint Secured Party and/or its assigns and agents its true and lawful attorney-in-fact which shall be deemed a power coupled with and interest with full authority and power to do and perform all and every act and thing whatsoever requisite and necessary to be done in the premises, as fully, to all intent and purposes as Debtor might or could do if personally present, with full power of substitution and revocation, to complete, sign, execute, file and deliver any title, vehicle registration or certificate of ownership, UCC financing statement(s), and to sell, record interest, transfer interest otherwise dispose of or encumber the Collateral. Secured Party and/or its assigns may apply the proceeds from any such sale or other disposition against any and all obligations of the Debtor to Secured Party and/or its assigns. If your signature on any financing statement or other instrument is required by law, you shall execute such supplemental instruments and financing statements as we deem to be necessary and advisable and shall otherwise cooperate to defend our title by filing or otherwise. You also agree to pay us on demand filing, registration and releasing fees prescribed by the UCC or other law.

Rev 12/04





# EQUIPMENT FINANCE AGREEMENT


EXHIBIT B

| Key Equipment Finance Inc. | ("Secured Party") | 3075 Highland Pkwy, 7th floor<br>Downers Grove, IL 60515<br>PHONE (888) 357-9457     FAX (866) 256-2230 | Agreement Number<br>1051524/1167907 |
| --- | --- | --- | --- |

**A. Debtor:**

BRUSKI EXCAVATING INC

3805 STANDISH
Marengo , IL 60152
(815) 565-7224

**Supplier:**

See attached invoice(s) or equipment list for Supplier information

**B. Collateral:** (Quantity Description & Serial No.)
See attached invoice(s) or equipment list ("Collateral")
**Location:** 3805 Standish, Marengo , IL 60152

**C. Schedule of Payments:**

| Initial<br>Term<br>(In Months) | Total Number<br>Of Payments | Amount of Each<br>Payment ($) | Total Initial Payment $ 0.00 | |
| --- | --- | --- | --- | --- |
| 60 | 60 | 3,728.05 | First $ 0.00 | Doc. Fee $ 250.00 |
|  |  |  | Last $ 0.00 | Deposit $ 0.00 |

**D. DISCLAIMER OF WARRANTIES AND CLAIMS; LIMITATION OF REMEDIES.** THERE ARE NO WARRANTIES BY OR ON BEHALF OF SECURED PARTY AND NEITHER THE SUPPLIER NOR ANY OTHER PARTY IS SECURED PARTY'S AGENT. DEBTOR ACKNOWLEDGES AND AGREES BY ITS SIGNATURE BELOW AS FOLLOWS: (A) SECURED PARTY MAKES NO WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE COLLATERAL, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CONDITION, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY CHARACTERISTICS OF THE COLLATERAL; (B) DEBTOR ACCEPTS COLLATERAL "AS IS" AND WITH ALL FAULTS; (C) DEBTOR ACKNOWLEDGES THAT THE COLLATERAL WILL BE USED SOLELY FOR COMMERCIAL OR BUSINESS PURPOSES; (D) IF THE COLLATERAL IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE SUPPLIER OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, DEBTOR'S ONLY REMEDY, IF ANY, SHALL BE AGAINST THE SUPPLIER OR MANUFACTURER OF THE COLLATERAL AND NOT AGAINST SECURED PARTY; (E) DEBTOR SHALL HAVE NO REMEDY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES AGAINST SECURED PARTY; AND (F) NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL FOR ANY PURPOSE SHALL RELIEVE DEBTOR OF THE OBLIGATION TO MAKE PAYMENTS OR RELIEVE DEBTOR OF ANY OTHER OBLIGATION UNDER THIS AGREEMENT.

**E.** Amendments: No term or provision of this Agreement may be amended, altered, waived or discharged except by a written instrument signed by all parties to this Agreement.

THIS AGREEMENT, THE TERMS OF WHICH HAVE BEEN FREELY NEGOTIATED BY EACH PARTY, IS SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE OR FOLLOWING PAGE WHICH ARE MADE A PART HEREOF AND WHICH DEBTOR AND SECURED PARTY ACKNOWLEDGE THEY HAVE READ AND ACCEPTED.

**THIS IS A NON-CANCELABLE AGREEMENT.**

| Secured Party: Key Equipment Finance Inc. | Debtor: BRUSKI EXCAVATING INC |
| --- | --- |
| By: _____ *Funding Supervisor* | Signature: x _Regan Bruski_ |
| Title: | Regan Bruski , Vice-president |

**Certificate of acceptance:** The undersigned Debtor certifies to Secured Party that all items of Collateral referred to above or on the attachment(s) hereto have been received and irrevocably accepted by the Debtor and were at the time of receipt in good order and condition and acceptable to use. Debtor approves payment to the Supplier. Debtor hereby certifies that Secured Party has fully and satisfactorily performed all covenants and conditions to be performed by it under the Agreement. Debtor agrees to enforce, in its own name, all warranties, agreements or representations, if any, which may be made by the Supplier in respect to the Collateral.

x _Regan Bruski_  8/19/05
Signature                          Date
Regan Bruski , Vice-president

**REQUEST FOR ELECTRONIC PAYMENT**
**Please attach a voided check from the account to be debited**
The undersigned hereby authorizes and requests Secured Party to initiate electronic debit entries (and credit entries and adjustments for any debit entries in error) or effect a charge by any other commercially accepted practice to the account indicated below in the financial institution named below ("Depository"). The undersigned hereby authorizes and requests the Depository to honor the debit and/or credit entries initiated by Secured Party. This authorization is for payments due under the referenced Agreement. This authority is to remain in force until such time as all amounts due under the Agreement are paid in full or until Secured Party and Depository have received written notification from the undersigned terminating this authorization in such time and manner as to afford Secured Party and Depository a reasonable opportunity to act on it.

Customer Name Printed: BRUSKI EXCAVATING INC          Agreement Number: 1051524/1167907

Depository Name and Branch: _____          Account Number: _____

Depository Address (city & state): _____

Depository Telephone Number: _____          Customer Signature: _____

**Guaranty:** In consideration of lessor, its successors and assigns ("Secured Party"), entering into this Financing Agreement ("Agreement"), the part(ies) or individual(s) executing this Guaranty ("Guarantor," whether one or more) unconditionally and irrevocably guaranty to Secured Party, the prompt payment and performance of all obligations of the Debtor. Guarantor agrees that this is a guaranty of payment and not of collection, and that Secured Party can proceed directly against Guarantor without first proceeding against Debtor or against the Collateral covered by the Agreement. Guarantor waives all claims and notices, including those of protest, presentment and demand. Guarantor agrees that Secured Party can renew, extend or otherwise modify the terms of the Agreement and Guarantor will be bound by such changes. If Debtor defaults under the Agreement, Guarantor will immediately perform all obligations of Debtor under the Agreement, including, but not limited to, paying all amounts due under the Agreement. Guarantor will pay to Secured Party all expenses (including attorneys' fees) incurred by Secured Party in enforcing Secured Party's rights against Guarantor. This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of Debtor or Guarantor and will bind Guarantor's heirs, personal representatives, successors and assigns. If more than one Guarantor has signed this Guaranty, each Guarantor agrees that his/her liability is joint and several. Guarantor authorizes Secured Party or any of Secured Party's designees to obtain and share with others credit bureau reports regarding Guarantor's personal credit, and make other credit inquiries that Secured Party determines are necessary. **THIS GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF UTAH. GUARANTOR CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN UTAH OR IN ANY OTHER STATE WHERE SECURED PARTY HAS AN OFFICE. GUARANTOR EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY.**

| Signature: x _Jeramy Bruski_  8/19/05 | x _Regan Bruski_  8/19/05 x | |
| --- | --- | --- |
| Name: Jeramy Bruski     (Date) | Regan Bruski          (Date) | (Date) |



*Rev 12/01*          Page





# EQUIPMENT FINANCE AGREEMENT
continued

## TERMS AND CONDITIONS

Agreement Number: 1051524/1167807

**1. Definitions; Reports:** The words "you" and "your" refer to the DEBTOR, its successors and assigns, as shown on the reverse side or preceding page, as applicable (the "first page"). The words "we", "us" and "our" refer to the SECURED PARTY, its successors and assigns, as shown on the first page. You authorize us and our designees to obtain investigative credit reports, regarding you and each guarantor, from a credit bureau or a credit agency and to investigate the references given on any statement or data obtained and to share such reports with others.

**2. Acceptance:** We agree to lend to you, and you agree to borrow from us, an amount for the purchase of equipment, items, products, software, services, and other personal property described or referenced on the first page ("Collateral"), for the term shown on the first page ("Initial Term"), which shall commence on the commencement of Secured Party's billing cycle following the funding of the loan evidenced by the Agreement (the "Loan"). We shall have no obligations hereunder until we accept and sign this Agreement at our offices. If this Agreement is executed by you and thereafter sent to us by facsimile transmission, then until such time as we have received the Agreement with your manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by us in our offices, the original Agreement and chattel paper and shall be admissible for all purposes as the original Agreement. You agree to promptly forward to us the Agreement with your manual signature thereon and upon receipt by us the agreement with your manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

**3. Security Interest:** You hereby grant to us a security interest under the Uniform Commercial Code ("UCC") in the property described or referenced as Collateral and all accessions and additions thereto and replacements thereof and all proceeds and products of the foregoing (collectively, the "Collateral" and individually an "Item" or "Item of Collateral"). Such security interest is granted to secure payment and performance by you of your obligations hereunder and under any other present or future agreement with us.

**4. Payments:** You promise to pay us the payments shown on the same page, in advance, commencing as of the first day of the Initial Term and continuing on the first day of each month, a "Payment month in which a payment is due (each day a Payment is due hereunder a "Payment Date"), without need of an invoice; provided, as indicated in the Schedule of Payments, the payments included in the Total Initial Payment shall be paid upon your execution of this Agreement. We reserve the right to adjust the payment shown in the Schedule of Payments, by up to 10% to reflect changes in the final amounts paid to the Supplier or amount borrowed. Any such adjustment shall be reflected on a subsequent invoice to be sent to you within 30 days. If the contemplated transaction is not consummated, the Total Initial Payment may be returned, by us, as partial compensation for costs and expenses incurred in preparation for the transaction. On second Payment Date in addition to the Payment due on such date you agree to pay us an amount equal to 1/30th of the Payment Amount for each day from and including the date the loan is funded to but excluding the first day of the Interim Term. Your obligation to make payments and pay other amounts hereunder is absolute and unconditional and not subject to abatement, reduction or set-off for any reason whatsoever. The Initial Term shall continue for the number of months indicated on the first page. The Deposit shown on the first page shall not bear interest and we may apply the Deposit to cure any default, in which event you will promptly restore the Deposit to its full amount. After all of the obligations under this Agreement are fully paid and performed, any remaining balance of the Deposit shall be refunded to you.

**5. Location:** You agree to maintain records showing the location of each Item of Collateral. You shall report such location to us upon our request. Your failure, to maintain records showing the location of each Item of Collateral and/or to report the location of each Item of Collateral shall constitute a default.

**6. Maintenance; Installation:** You are responsible for installing and keeping the Collateral in good working order. You shall not make any alterations, additions or improvements to the Collateral, which detract from its economic value or functional utility. All additions and improvements made to the Collateral shall be deemed accessions thereto, and shall not be removed if removal would impair the Collateral's economic value or functional utility. If the Collateral is damaged or lost, you agree to continue making scheduled payments unless you pay the Casualty Value pursuant to Section 13.

**7. Insurance:** You agree to keep the Collateral fully insured against loss until this Agreement is paid in full and to have us named as loss payee. You also agree to obtain a general public liability insurance policy, with minimum limits of $100,000/$300,000 for bodily injury and $50,000 for property damage, from anyone who is acceptable to us. You agree to provide us with certificates or other evidence of insurance acceptable to us, before the Initial Term begins, and during the term. If at any time you have failed to deliver to us a valid certificate of insurance reflecting such insurance as being in effect, then we will have the right, but no obligation, to have such insurance protecting us placed for the term of the Agreement at your expense; and if so placed, we will add to your payment and you will pay us our costs of obtaining such insurance and any customary charges or fees of ours or our designee associated with such insurance together with interest thereon at the maximum rate permitted by applicable law.

**8. Taxes and Fees:** You agree to pay when due or reimburse us for all taxes, fees, fines and penalties relating to use or ownership of the Collateral or to this Agreement, including documentary stamp taxes, now or hereafter imposed, levied or assessed by any federal, state or local government or agency. If any federal, state, county or local government or agency requires any taxes, charges or fees to be paid in advance, and we pay such taxes, charges or fees, we reserve the right to adjust the payment shown in the Schedule of Payments, to reflect the payment of such taxes, charges or fees. Any such adjustment shall be reflected on a subsequent invoice to be sent to you within 30 days.

**9. Personal Property:** The Collateral will be and shall remain personal property and, if requested by us, you will obtain real property waivers satisfactory to us. You shall keep the Collateral free from any

and all liens and encumbrances. You shall give us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Collateral. You hereby authorize us and appoint us as your attorney-in-fact with the power of attorney to file this Agreement and any financing statement(s) or security agreement(s) with respect to the Collateral in any state in the United States. You further authorize us to file this Agreement and such financing statements or security agreements without your signature thereon. If your signature on any financing statement is required by law, you shall execute such supplemental instruments and financing statements we deem to be necessary and advisable and shall otherwise cooperate to defend our title by filing or otherwise. You also agree to pay us on demand filing, registration and releasing fees prescribed by the UCC or other law. Any Collateral that is subject to title registration laws shall be titled and registered as directed by us.

**10. Default; Remedies:** If you do not pay when due or if you breach or fail to perform any of your other covenants and promises under this Agreement or any other agreement entered into by you and held or serviced by us or if you declare bankruptcy or insolvency or if you terminate your entity existence or take any actions regarding the cessation or winding up of your business affairs, you will be in default. If you are in default, at our election, we can accelerate and require that you pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance". The Accelerated Balance will be equal to the total of (i) accrued and unpaid amounts, and (ii) the remaining payments. We can also pursue any of the remedies available to us under the UCC or any other law. In addition, you agree to pay our reasonable attorneys' fees and actual costs including repossession and collection costs, and all non-sufficient funds charges and similar charges.

**11. Late Charge:** If any part of a payment is late, you agree to pay a late charge equal to the lesser of (a) the greater of 10% of the payment or $25.00 or (b) the maximum amount permitted by applicable law.

**12. Assignment; Inspection:** <u>YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN, LEASE OR ENCUMBER THE COLLATERAL OR THIS AGREEMENT.</u> We may sell, transfer, assign, or encumber this Agreement. You agree that if we sell, transfer, assign, or encumber this Agreement, the assignee will have the rights and benefits that we assign to the assignee and will not have to perform any of our obligations. You agree that the rights of the assignee will not be subject to any claims, defenses or set-offs that you may have against us. We and our agents and representatives shall have the right at any time during regular business hours to inspect the Collateral and for that purpose to have access to the location of the Collateral.

**13. Risk of Loss:** You hereby assume and shall bear the entire risk of loss, theft, damage and destruction of the Collateral from any cause whatsoever and no loss, theft, damage or destruction of the Collateral shall relieve you of the obligation to make scheduled payments or any other obligation under this Agreement, and this Agreement shall remain in full force and effect except as provided below. You shall promptly notify us in writing of such loss, theft, damage or destruction. If damage of any kind occurs to any Item of Collateral, you, at our option, shall at your expense (a) place the Item in good repair, condition or working order, or (b) if the Collateral cannot be repaired or is lost, stolen or suffers a constructive loss under an insurance policy covering the Collateral, pay to us the "Casualty Value." The Casualty Value will be equal to the total of (i) accrued and unpaid amounts, and (ii) the remaining payments discounted to present value, using the Federal Funds rate as of the date of payment.

**14. Choice of Law; Consent to Jurisdiction; Venue:** <u>This Agreement shall be interpreted, and all rights and liabilities of the parties hereto and thereunder shall be determined and governed as to validity, interpretation, enforcement and effect, by the laws of the State of UTAH.</u> Without limiting the right of Secured Party to bring any action or proceeding against Debtor in the courts of other jurisdictions, Debtor hereby irrevocably submits to the jurisdiction of any State or Federal court located in UTAH or in any other state where Secured Party has an office. Secured Party and Debtor expressly waive any right to a trial by jury.

**15. Miscellaneous:** During the term of this Agreement, you agree to provide us with all financial statements and copies of federal or state tax returns as we may reasonably request. If we supply you with labels, you shall label any and all Items of Collateral and shall keep the same affixed in a prominent place. If any provision hereof or any remedy herein provided is found to be invalid under any applicable law, such provision shall be inapplicable and deemed omitted, but the remaining provisions hereof, including remaining default remedies, shall be given effect in accordance with the manifest intent hereof. You agree that any delay or failure to enforce our rights under this Agreement does not prevent us from enforcing any rights at a later time. You agree that the terms and conditions indicated above and on the first page are a complete and exclusive statement of your agreement and they may be modified only by written agreement signed by all of the parties hereto and not by course of performance. You agree that the original of this Agreement may be microfilmed or electronically duplicated and a photostatic copy of such microfilm or electronic duplication may be introduced in lieu of the original thereof and without further foundation. The parties hereto expressly waive the secondary evidence rule. You acknowledge receipt of a copy of this Agreement. You agree that this Agreement will be binding upon your successors, assigns, heirs and legal representatives. You agree that our waiver of any provision hereunder shall not constitute a waiver of any other matter. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of interest permitted to be charged or collected by applicable law, and any such excess payment will be applied to the payments in inverse order of maturity, and any remaining excess will be refunded to you.



(Debtor's Initials)



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| **KEY EQUIPMENT FINANCE INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CASE NO.    08 CV 50005** |
| ) | |
| **v.** ) | |
| ) | |
| **JEREMY BRUSKI, individually** ) | |
| ) | |
| **Defendant.** ) | |

## AFFIDAVIT OF PLAINTIFF'S FEES AND COSTS

**NOW COMES** MAYSOUN B. IQAL ("Affiant"), who, being first duly sworn, on oath states and deposes as follows:

1.      Affiant is an associate attorney with the law firm of COSTON & RADEMACHER, P.C., attorney of record for the Plaintiff, KEY EQUIPMENT FINANCE INC. ("KEY EQUIPMENT"). If Affiant were sworn as a witness regarding the procedural history of the above-entitled cause, she would competently testify the facts relating thereto.

2.      As of March 7, 2008, Patricia E. Rademacher incurred 3.00 hours on the above-captioned matter.    Patricia E. Rademacher is a partner at COSTON & RADEMACHER, and bills at a rate of $275.00 per hour, for a total of $825.00.

3.      As of March 7, 2008, Maysoun B. Iqal incurred 6.4 hours on the above-captioned matter.    Maysoun B. Iqal is an associate attorney at COSTON & RADEMACHER, and bills at a rate of $200.00 per hour.    Maysoun B. Iqal will incur an additional 1.0 hours for the presentation of this motion for a total of $1,480.00.



EXHIBIT

D

4.      As of March 7, 2008, Nicholas Ronconi incurred 2.3 hours on the above-captioned matter.     Nicholas Ronconi is an associate attorney at COSTON & RADEMACHER, and bills at the rate of $150.00 per hour, for a total of $345.00.

4.      As of March 7, 2008, .8 hours of clerks' time had been incurred on the above-captioned matter.  COSTON & RADEMACHER bills its clerks at a rate of 95.00 per hour, for a total of $76.00.

5.      Therefore, as of March 7, 2008, the total actual and projected time incurred on this matter amounted to at least $2,726.00 (see attached).   An additional $727.45 has been incurred to date as legal costs (see attached).

6.      **FURTHER AFFIANT SAYETH NOT.**

Maysoun B. Iqal

Subscribed and Sworn to before me
this 7th day of March, 2008.

Notary Public

OFFICIAL SEAL
EDWARD P. GOLITKO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-10-2008

| File | Trans Date | Atty | H P | Tcd | Rate | Hours Worked | Hours to Bill | Amount | | Ref # |
|------|-----------|------|-----|-----|------|--------------|---------------|--------|---|-------|
| **File ID 6914.182640 Key Equipment Finance Inc.** | | | | | | | | | | |
| 6914.182640 | 12/11/2007 | 27 | A | 29 | 275.00 | 1.00 | 1.00 | 275.00 | Review documents; open new file; email to Sal re: discount of future rental payments. | ARCH |
| 6914.182640 | 12/13/2007 | 4 | A | 29 | 200.00 | 0.50 | 0.50 | 100.00 | Review of file. | ARCH |
| 6914.182640 | 12/13/2007 | 4 | A | 29 | 200.00 | 1.10 | 1.10 | 220.00 | Preparation of Complaint. | ARCH |
| 6914.182640 | 12/14/2007 | 4 | A | 29 | 200.00 | 0.50 | 0.50 | 100.00 | Preparation of Complaint. | ARCH |
| 6914.182640 | 12/17/2007 | 4 | A | 29 | 200.00 | 0.70 | 0.70 | 140.00 | Email with client; revision of Complaint. | ARCH |
| 6914.182640 | 12/19/2007 | 4 | A | 29 | 200.00 | 0.40 | 0.40 | 80.00 | Email client; amend Complaint and send verification. | ARCH |
| 6914.182640 | 12/27/2007 | 10 | A | 29 | 95.00 | 0.30 | 0.30 | 28.50 | Several attempts to contact debtors; spouse advises filing bankruptcy. | ARCH |
| 6914.182640 | 12/27/2007 | 4 | A | 29 | 200.00 | 0.80 | 0.80 | 160.00 | Review for Bankruptcy, update client; prepare Complaint for filing. | ARCH |
| 6914.182640 | 01/02/2008 | 4 | A | 29 | 200.00 | 0.20 | 0.20 | 40.00 | Review for Bankruptcy, email client. | ARCH |
| 6914.182640 | 01/04/2008 | 4 | A | 29 | 200.00 | 0.20 | 0.20 | 40.00 | Revision of Complaint; send for filing. | ARCH |
| 6914.182640 | 01/04/2008 | 9 | A | 56 | 95.00 | 0.50 | 0.50 | 47.50 | File Suit US District Court for the Northern District of Illinois Western Division 08 CV 50005 Judge Kapala  Magistrate Judge Mahoney | ARCH |
| 6914.182640 | 01/15/2008 | 6 | A | 29 | 150.00 | 0.30 | 0.30 | 45.00 | Reviewed file; could not serve Defendant's house; Defendant is selling home considering filing a lis pendens. | ARCH |
| 6914.182640 | 01/23/2008 | 4 | A | 29 | 200.00 | 0.30 | 0.30 | 60.00 | Check on service; contact chambers re: Settlement conference. | ARCH |
| 6914.182640 | 01/28/2008 | 4 | A | 29 | 200.00 | 0.20 | 0.20 | 40.00 | Email to Bankruptcy attorney. | ARCH |
| 6914.182640 | 01/31/2008 | 4 | A | 29 | 200.00 | 0.60 | 0.60 | 120.00 | Email to client; phone call with debtor's counsel | ARCH |
| 6914.182640 | 02/06/2008 | 4 | P | 29 | 200.00 | 0.30 | 0.30 | 60.00 | Set for service at 341, email communication with client. | 25 |
| 6914.182640 | 02/12/2008 | 4 | P | 29 | 200.00 | 0.40 | 0.40 | 80.00 | Filed Affidavit of Service. | 26 |
| 6914.182640 | 02/18/2008 | 4 | P | 29 | 200.00 | 0.20 | 0.20 | 40.00 | Check docket for answer on bankruptcy filing. | 27 |
| 6914.182640 | 02/27/2008 | 27 | P | 29 | 275.00 | 2.00 | 2.00 | 550.00 | Attend Status hearing - extremely long Court call. | 28 |
| 6914.182640 | 03/05/2008 | 6 | P | 29 | 150.00 | 2.00 | 2.00 | 300.00 | Draft Motion Default Judgment plus Affidavit of Support. | 29 |
| **Total for File ID 6914.182640** | | | | | Billable | 12.50 | 12.50 | 2526.00 | Key Equipment Finance Inc. Bruski Excavating Incorporated | |

| | | | GRAND TOTALS | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Billable | 12.50 | 12.50 | 2526.00 | | | |

| File | Trans Date | Atty | H P | Tcd | Rate | Amount | | Ref # |
|------|-----------|------|-----|-----|------|--------|---|-------|
| **File ID 6914.182640 Key Equipment Finance Inc.** | | | | | | | | |
| 6914.182640 | 12/31/2007 | 4 | A | 23 | | 350.00 | Filing Fee - Complaint | ARCH |
| 6914.182640 | 12/31/2007 | 4 | A | 62 | 0.750 | 1.50 | Pacer Service Center/on-line bankruptcy information. | ARCH |
| 6914.182640 | 12/31/2007 | 4 | A | 62 | 0.750 | 2.25 | Pacer Service Center/on-line bankruptcy information. | ARCH |
| 6914.182640 | 01/04/2008 | 4 | A | 37 | 0.200 | 10.80 | Copier | ARCH |
| 6914.182640 | 01/04/2008 | 4 | A | 37 | 0.200 | 5.40 | Copier | ARCH |
| 6914.182640 | 01/31/2008 | 4 | A | 23 | | 157.50 | Investigative Research - Skip Trace Jeremy Bruski | ARCH |
| 6914.182640 | 01/31/2008 | 4 | A | 23 | | 200.00 | Paralegal Service - Service on Bruski | ARCH |

| Total for File ID 6914.182640 | Billable | 727.45 | Key Equipment Finance Inc. Bruski Excavating Incorporated |
|---|---|---|---|

**GRAND TOTALS**

| | Billable | 727.45 |
|---|---|---|

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| **KEY EQUIPMENT FINANCE INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO.    08 CV 50005** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEREMY BRUSKI, individually** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER ON DEFAULT JUDGMENT**

This cause coming to be heard upon Plaintiff's Motion for Default Judgment, and the Court being fully advised in the premises and having considered Plaintiff's Verified Complaint and the Affidavit of Plaintiff's Counsel as to fees and costs, and the Court having found that Defendant was served with the Summons and Complaint or waived service in the above-captioned matter and that said Defendant has failed to file an Answer or other responsive pleading to the Complaint;

**IT IS THEREFORE HEREBY ORDERED AND ADJUDGED THAT**:

1.      Defendant JEREMY BRUSKI, individually, be and hereby is, held to be in default;

2.      The Court finds the issues in favor of Plaintiff KEY EQUIPMENT FINANCE INC., and against JEREMY BRUSKI, individually, and Plaintiff's Damages are hereby assessed at $98,050.62, plus $2,726.00 in fees and $727.45 in costs, for a total of $101,504.07.

3.      Judgment is hereby entered in favor of Plaintiff KEY EQUIPMENT FINANCE INC., and against JEREMY BRUSKI, individually, for the sum of $101,504.07; and

4.     The Court finds that there is no just reason for delaying either enforcement or appeal or both.

**IT IS SO ORDERED this _____ day of March, 2008.**


_____
FREDERICK J. KAPALA, JUDGE
UNITED STATES DISTRICT COURT


Respectfully Submitted by:

/s/ Maysoun B. Iqal_____
Maysoun Iqal, NDIL 005855
COSTON & RADEMACHER
Attorneys for Plaintiff
105 W. Adams, Suite 1400
Chicago, IL  60603
Telephone:  (312) 205-1010

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

KEY EQUIPMENT FINANCE INC.           )
                                     )
    Plaintiff,                       )
                                     )        CASE NO.    08 CV 50005
                                     )
v.                                   )
                                     )
JEREMY BRUSKI, individually          )
                                     )
    Defendant.                       )

## CERTIFICATE OF SERVICE

To:    Jeremy Bruski
        3805 Standish Rd.
        Marengo, IL 60152

        I, Maysoun B. Iqal, an attorney, certify that I served a copy of this Motion for Default Judgment, to whom it is directed, at the address shown above, by causing said document to be placed into a properly addressed envelope and depositing the same in the U.S. Mail depository at 105 W. Adams, Chicago, Illinois 60603, with proper postage prepaid, at or before 5:00 p.m. on the 7th day of March, 2008.

                            /s/     Maysoun B. Iqal
                                Maysoun B. Iqal

Patricia E. Rademacher
Maysoun B. Iqal (005855)
COSTON & RADEMACHER
Attorneys for Plaintiff
105 W. Adams, Suite 1400
Chicago, Illinois 60603
Telephone: (312) 205-1010